UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80248-CIV-MARRA

LOUISANNA HERCULE,

Plaintiff,

vs.

WENDY'S OF N.E. FLORIDA, INC., a Florida
for profit corporation; and PATRICIA
THELIGENE, individually,

Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant Wendy's of N.E. Florida, Inc., and Defendant Patricia Theligene's Motion to Dismiss Count III of the Amended Complaint [DE 6], and Defendant Patricia Theligene's Motion to Dismiss Counts IV and V of the Amended Complaint [DE 7]. The motions are fully briefed and ripe for review. The Court has carefully considered the filings of the parties and is otherwise fully advised in the premises.

I.  BACKGROUND

Plaintiff, Louisanna Hercule ("Hercule"), sues Defendants, Wendy's of N.E. Florida, Inc. ("Wendy's"), and Patricia Theligene ("Theligene"), for violations of the Family Medical Leave Act of 1993, 29 U.S.C. § 2615 (Counts I and II), and under Florida law for intentional infliction of emotional distress (Count III). Additionally, Hercule sues for pregnancy discrimination under

the Florida Civil Rights Act of 1992, Fla. Stat. § 760 (Count IV), and reserves the right to sue for discrimination under Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count V).

According to the allegations of the Amended Complaint ("Am. Compl.") [DE 1 at 17], Hercule began working for Wendy's on or about January 4, 2004. (Am. Compl. ¶ 6). In late 2008, Hercule learned she was pregnant with her second child and notified her manager, Theligene, no later than January 26, 2009. (Am. Compl. ¶ 7). Theligene immediately reacted negatively, encouraging Hercule to have an abortion, belittling and demeaning Hercule by telling her to "take your fat pregnant ass home" whenever she disagreed with Hercule, and singling out Hercule for different and hostile treatment because of her pregnancy. (Am. Compl. ¶ 8).

On Friday, February 6, 2009, Hercule became ill due to complications associated with her pregnancy, and requested leave from her duties; after receiving permission from her shift manager, Hercule went home. (Am. Compl. ¶ 9). Theligene, "acting on behalf of herself and on behalf of Defendant Wendy's," retaliated against Hercule by falsely writing Hercule up for not calling to ask permission to leave, and by deliberately changing Hercule's work schedule for the next day without notifying her.  This was allegedly done in an effort to set Hercule up for a "no call, no show" violation. (Am. Compl. ¶ 10).

On the following day, February 7, 2009, Hercule was still too ill to work; additionally, her son required treatment for a severe ear infection. (Am. Compl. ¶ 11). While visiting a pediatrician, Hercule received several hostile phone calls from Theligene complaining about Hercule's absence. Although someone could cover Hercule's morning shift, Theligene told Hercule that she needed to get her "pregnant ass" to work to close the store that day or she would be fired. (Am. Compl. ¶¶ 13-15). Fearing for her job, Hercule headed to work after returning home from the pediatrician, but was advised en route by a phone call from Theligene that they had found coverage and that Hercule need not show up for work. (Am. Compl. ¶ 16). Theligene, however, created a false write-up citing Hercule for a "no call, no show" violation for that day. (Am. Compl. ¶ 17).

The next day, on February 8, 2009, Hercule was severely admonished at work by Theligene, who criticized Hercule for not coming to work despite the illnesses of both her and her son; Theligene also stated, "I know you're pregnant, and maybe you should just stay your pregnant ass home because I'm not going to deal with this bull-shit anymore." (Am. Compl. ¶ 18). Because of Theligene's remarks, Hercule believed that any additional attempts to request sick leave would result in her termination.  As a result, she suffered extreme apprehension and stress. (Am. Compl. ¶ 19). Despite feeling ill and suffering the cramps and complications associated with

3

pregnancy, Hercule worked full shifts that day and the following two days, February 9th and 10th. (Am. Compl. ¶ 20-21)

On the morning of February 11, 2009, Hercule awoke in a pool of blood.  She was immediately taken to an emergency room where she was informed she had suffered a miscarriage. (Am. Compl. ¶ 22-24). After physicians induced labor to expel the fetus, Hercule was told to stay off her feet and refrain from work for 48 hours. (Am. Compl. ¶ 25). Hercule attempted to contact Theligene about her condition via numerous phone calls, but Theligene did not return any of them. (Am. Compl. ¶ 27-28). Theligene, "on her own behalf and on behalf of Wendy's," terminated Hercule on February 13, 2009 because of her attempts to take time off of work. (Am. Compl. ¶ 30).

Defendants move to dismiss Count III of the Amended Complaint on the basis that the alleged facts do not state a cause of action for intentional infliction of emotional distress [DE 6]. Specifically, Defendants argue that the alleged conduct in this case fails to satisfy the "outrageousness" element required by Florida law [DE 6 at 4].

Defendants also move to dismiss Counts IV and V of the Amended Complaint with respect to Defendant Theligene, individually. Defendants argue that this kind of Florida Civil Rights Act claim may be brought only against an employer, not an individual employee [DE 7]. Plaintiff asserts that

the motion to dismiss is moot since Count IV of the Amended Complaint only applies to Defendant Wendy's, and Count V has not been pled [DE 8].

## II.  LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "While a complaint . . . does not need detailed factual allegations . . . a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal will be appropriate. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). A claim is also properly dismissed if its factual allegations, taken as true, are legally insufficient to state a claim for which relief can be granted. See, e.g., Papasan v. Allain, 478 U.S. 265, 283 (1986).

## III.  DISCUSSION

### A. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under Florida law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is

5

subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." E. Airlines, Inc. v. King, 557 So. 2d 574, 575-76 (Fla. 1990) (quoting Restatement (Second) of Torts § 46 (1965)). The tort of intentional infliction of emotional distress is comprised of the following elements:

> (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;
> (2) The conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;
> (3) The conduct caused emotional distress; and
> (4) The emotional distress was severe

Stewart v. Walker, 5 So. 3d 746, 749 (Fla. Dist. Ct. App. 2009) (quoting LeGrande v. Emmanuel, 889 So. 2d 991, 994 (Fla. Dist. Ct. App. 2004)). For a defendant's conduct to qualify as "extreme and outrageous," it must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278 (Fla. 1985) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Scheller v. Am. Med. Int'l, Inc., 502 So. 2d 1268, 1271 (Fla. Dist. Ct. App. 1987) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Courts decide the outrageousness of a defendant's conduct as a matter of law. See, e.g.,

Vamper v. United Parcel Service, Inc., 14 F. Supp. 2d 1301, 1306 (S.D. Fla. 1998); Johnson v. Thigpen, 788 So. 2d 410, 413 (Fla. Dist. Ct. App. 2001); Gandy v. Trans World Computer Tech. Group, 787 So. 2d 116, 119 (Fla. Dist. Ct. App. 2001); Ponton v. Scarfone, 468 So. 2d 1009, 1011 (Fla. Dist. Ct. App. 1985).

Generally, courts have been hesitant to allow intentional infliction of emotional distress claims that arise from abuses in the workplace. See generally Hare v. Citrus World Inc., 39 F. Supp. 2d 1365, 1369 (M.D. Fla. 1999) ("precedent on the tort . . . , especially within the employment context, reveals an unwillingness by Florida courts to allow a plaintiff to proceed on this theory"); Vernon v. Med. Mgmt. Assoc. of Margate, Inc., 912 F. Supp. 1549, 1558 (S.D. Fla. 1996). Ordinary sexual harassment by co-workers, for instance, is generally not considered to be outrageous conduct, even when the harassment is flagrant. See Ball v. Heilig-Meyers Furniture Co., 35 F. Supp. 2d 1371, 1375-76 (M.D. Fla. 1999) (no outrageous conduct where defendant store manager rubbed genitals against plaintiff and repeatedly engaged in verbal sexual innuendo); Pucci v. USAir, 940 F. Supp. 305, 309 (M.D. Fla. 1996) (placement of pornographic material and suggestive comments did not reach level of outrageousness). But cf. Johnson v. Thigpen, 788 So. 2d 410, 412 (Fla. Dist. Ct. App. 2001) (verbal sexual harassment, coupled with the existence of "repeated offensive,

7

unwelcomed physical contact," was sufficiently outrageous). Courts also regularly find that racial discrimination allegations, whether delivered by verbal insults or intimidating acts, are not egregious enough to be "outrageous." See Vance v. Southern Bell Tel. & Tel. Co., 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) (affirming dismissal of intentional infliction claim where the defendant allegedly hung rope noose over the plaintiff's desk, sabotaged her work, and otherwise racially discriminated against her); Martinez v. Pavex Corp., 422 F. Supp. 2d 1284, 1296-97 (M.D. Fla. 2006) (repeated racial slurs and other alleged discriminatory treatment did not constitute outrageous conduct).

In the instant case, Hercule alleges that Theligene, acting on behalf of Wendy's, repeatedly insulted Hercule, threatened her, and created a false work record in order to get her terminated, all because of Hercule's pregnancy and the resulting medical leave Hercule required. Defendants argue that Hercule's claim should be dismissed because their conduct was not outrageous as a matter of law. In order to determine outrageousness, the Court takes all the allegations in the Amended Complaint as true, and evaluates whether the Defendants' behavior was so egregious as to go beyond all possible bounds of decency.

Looking first to the nature of the alleged conduct, Plaintiff has not alleged that Defendants engaged in any offensive *physical* contact against

8

Hercule. According to the Amended Complaint, Theligene repeatedly issued derogatory statements regarding Hercule's pregnancy, hinted that Hercule would be fired if she took sick leave for herself or her son, and fabricated false work reports about Hercule.  Theligene, however, did not strike Hercule or otherwise contact her physically. This weighs against a finding of outrageousness.  In general, pervasive verbal workplace discrimination must be coupled with repeated offensive physical contact in order to rise to the level of outrageousness. See Byrd v. BT Foods, Inc., 948 So. 2d 921, 928 (Fla. Dist. Ct. App. 2007) (teasing by other employees "did not rise to the level of outrageous conduct required to sustain the tort"); De La Campa v. Grifols America, Inc., 819 So. 2d 940, 944 (Fla. Dist. Ct. App. 2002) (alleged verbal abuse and disparate treatment were not sufficiently outrageous); Johnson v. Thigpen, 788 So. 2d 410, 414 (Fla. Dist. Ct. App. 2001) ("persistent acts of verbal abuse" paired with "repeated offensive, unwelcomed physical contact" was outrageous).

Next, the Court rejects Hercule's contention that her status as an expectant mother made her particularly susceptible to emotional distress.[1]

---

[1] Specifically, Hercule cites Restatement (Second) of Torts § 46 cmt. f, illus. 11 (1965): "A, who knows that B is pregnant, intentionally shoots before the eyes of B a pet dog, to which A knows that B is greatly attached. B suffers severe emotional distress, which results in a miscarriage. A is subject to liability to B for the distress and for the miscarriage." [DE 9 at 9]. The intentional killing of a beloved pet in the presence of the victim is significantly more outrageous than what is alleged in this case.

Hercule does present cases where the element of outrageousness has been met because the tortfeasor knows of the victim's susceptibility to emotional distress due to some physical or mental condition, and proceeds to harm the victim anyway. See Doe v. Bd. of County Comm'rs, Palm Beach County, Fla., 815 F. Supp. 1448, 1450 (S.D. Fla. 1992) (harassment and pestering of mentally handicapped individual was sufficiently outrageous); Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 595-96 (Fla. Dist. Ct. App. 2007) (allowing claim where insurance company allegedly delayed payment for lung transplant in order to cause distress that would hasten the victim's demise). The Court, however, chooses not to liken the condition of pregnancy to that of a mentally disabled individual or a terminally ill patient. Cf. Gillis v. Sports Authority, Inc., 123 F. Supp. 2d 611, 616-17 (S.D. Fla. 2000) (employer's alleged discrimination against the plaintiff who suffered from blindness did not rise to the level of extreme and outrageous conduct).

Nor is a finding of outrageousness warranted because Theligene allegedly abused her authority. Hercule argues that outrageousness can arise from the abuse of power a defendant holds over a plaintiff's interests [DE 9 at 3]. See Restatement (Second) of Torts § 46 cmt. e (1965). Yet while the authority of the defendant is taken into account, the overall conduct must still be extreme. See id. In this instance, Theligene's authority

over Hercule was that of a manager over an employee, and Theligene allegedly used her position to insult and harass Hercule, threatening her with termination. This sort of abuse is simply not as extreme as cases where outrageous abuse of power has been found. For example, in <u>Gallogly v. Rodriguez</u>, 970 So. 2d 470, 472-73 (Fla. Dist. Ct. App. 2007), police officers allegedly ran a drug and prostitution ring out of the plaintiff's club and harassed him to ensure his silence. In <u>Lashley v. Bowman</u>, 561 So. 2d 406, 407-08 (Fla. Dist. Ct. App. 1990), a restaurant manager had the plaintiff arrested and taken away by police after she refused to pay for an undercooked lobster. In this case, Defendants' alleged actions do not rise to the extreme level of outrageousness required under the law.

Finally, Hercule alleges that the stress from the defendant's conduct caused her miscarriage and the loss of her unborn child. The outrageousness inquiry, however, focuses on the alleged conduct of the defendant, not on the results of the conduct or the plaintiff's reaction to it. The Florida Supreme Court in <u>Metropolitan Life Ins. Co. v. McCarson</u> noted that the insurance company's "withholding of further benefits had tragic results," but ultimately found that the company was not acting outrageously when it denied benefits to a person who later died of a heart attack. <u>See</u> 467 So. 2d at 279 (1985). Thus, following the Florida Supreme Court's reasoning, the magnitude of Hercule's loss does not alter the outrageousness analysis. <u>See</u>

11

also Latson v. Hartford Ins., No. 605CV1435ORL19KRS, 2006 WL 485097, at *4 (M.D. Fla. Feb. 28, 2006) (finding alleged racial discrimination not to be outrageous conduct, even when it was alleged to have caused plaintiff's miscarriage).[2]

After reviewing all of the circumstances surrounding the alleged conduct in this case, the Court finds these incidents do not constitute outrageous conduct as a matter of law.

B. TITLE VII DEFENDANTS

An "employer" under Title VII is "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b) (2006). The Eleventh Circuit has expressly held that "relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act." See Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006). The definition of "employer" under Title VII is identical to the definition of "employer" under the Florida Civil Rights Act. See Fla. Stat. § 760.02(7) (2010). Since the Florida Civil Rights Act was patterned after Title VII, interpretations of Title VII are persuasive in interpreting the Florida Civil Rights Act. See, e.g., Jones v. United Space Alliance, L.L.C., 494 F.3d 1306, 1310 (11th Cir. 2007) (Florida courts apply Title VII caselaw when

---

[2] Hercule relies on several cases from outside this jurisdiction. These decisions are not binding and the Court chooses not to follow them.

they interpret the Act); Hampton v. City of S. Miami, 186 F. App'x 967, 970 n.2 (11th Cir. 2006) ("Federal case law interpreting Title VII is applicable to cases arising under the FCRA."); Byrd v. Richardson-Greenshields Securities, Inc., 552 So. 2d 1099, 1104 (Fla. 1989) (applying Title VII reasoning to an earlier version of the Act). Thus, Florida courts have held that the Florida Civil Rights Act "does not impose liability on individual employees/supervisors." Patterson v. Consumer Debt Management and Educ., Inc., 975 So. 2d 1290, 1292 (Fla. Dist. Ct. App. 2008).

Based on the foregoing precedent, Hercule may only state a cause of action under Title VII and the Florida Civil Rights Act against Wendy's, not against Theligene. There is no need for Hercule to amend her complaint, however, as it appears that Count IV only asserts a claim against Wendy's. (Am. Compl. ¶¶ 59-60). Nevertheless, in the interest of clarity, the Court finds that to the extent that either Count IV or Count V could be construed to apply to Theligene individually, dismissal is appropriate.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Count III (DE 6) is **GRANTED**, and that Defendants' Motion to Dismiss Counts IV and Count V with respect to Defendant Patricia

Theligene, individually, (DE 7) is **GRANTED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 10th day of May, 2010.

                KENNETH A. MARRA
                United States District Judge